# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: _____Shlomo Hagler_____
J.S.C.
                                      *Justice*

PART 17

Anna Denicolo

-v-

Board of Education of the City of New York
and/or New York City Department of Education

INDEX NO. 654505/2016

MOTION DATE _____

MOTION SEQ. NO. __1__

The following papers, numbered 1 to _____, were read on this motion to/for _____

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits  *Petition Petition*  A-C | No(s). 1 |
| Answering Affidavits — Exhibits  1-2 + memorandum in support | No(s). 2 |
| Replying Affidavits _____ | No(s). 3 |

Upon the foregoing papers, it is ordered that this motion is *decided in accordance with the attached Decision / Order.*

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: __12/19/17__

_____Shlomo Hagler_____, J.S.C.
J.S.C.

1. CHECK ONE: ....................................................... ☑ CASE DISPOSED          ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED  ☑ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER          ☐ SUBMIT ORDER
                                                   ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 17
--------------------------------------------------------------X
In the Matter of the Application of
ANNA DENICOLO,

                                  Petitioner,

                                                    **Index No.: 654505/2016**

For an Order Vacating a Decision of a
Hearing Officer Pursuant to Section 3020-a (5)
of the Education Law and Article 75 of the CPLR

              - against -

THE BOARD OF EDUCATION OF THE CITY OF             **DECISION/ORDER**
NEW YORK AND/OR THE NEW YORK CITY
DEPARTMENT OF EDUCATION,

                                 Respondent.

--------------------------------------------------------------X

HON. SHLOMO S. HAGLER, J.S.C.:

       Petitioner Anna Denicolo commenced this Article 75 proceeding for a judgment vacating

an arbitration award made after a disciplinary hearing held pursuant to Education Law § 3020-a.

The August 15, 2016 arbitration opinion and award ("Award") found petitioner guilty of various

disciplinary charges brought by her employer, respondent the Board of Education of the City of

New York and/or the New York City Department of Education ("DOE"), and the hearing officer

terminated petitioner from her position.[1]  The DOE answers and opposes the petition.[2]

--------------------------------------------

     [1] The DOE refers to itself as the Board of Education of the City School District of the
City of New York.

     [2] The DOE initially cross-moved to dismiss the petition for failure to state a cause of
action.  By order dated May 22, 2017, this Court denied the cross-motion and ordered the DOE to
submit an answer.

## BACKGROUND AND FACTUAL ALLEGATIONS

Prior to being terminated on August 15, 2016, petitioner had been employed by the DOE for over 25 years and was a tenured teacher. Most recently, she had been assigned as a first grade teacher to Public School 195 ("P.S. 195") in the Bronx.

In March 2016, the DOE served petitioner with "specifications," or charges, alleging that, during the 2015-2016 school year, petitioner "engaged in neglect of duty, misconduct, verbal abuse, insubordination, harassment and conduct unbecoming her position . . . ." *See* petitioner's Exhibit "C" at 43. As set forth in the charges, due to her conduct, the DOE maintained that termination was warranted. Petitioner was charged with six specifications, which are set forth, as follows:

"Specification 1: On or about September 30, 2015, [petitioner] failed to follow school protocol, in that [petitioner]:
A. Failed to take Student A into her classroom when said student was crying.[3]
B. Stated to Student A's family member who was dropping Student A off at School, words to the effect of: I don't have time to deal with her.
C. Failed to call the main office and/or ask for assistance from the administration regarding Student A crying.
D. Sent Student A to a school aide who is not the appropriate person to be contacted when a student is crying and/or in crisis.

"2. On or about and between September 1, 2015 and December 14, 2015 [petitioner] called Student A's parent repeatedly in the evening, after being asked by parent to refrain from calling the home.

"3. On or about and between September 1, 2015 and December 14, 2015, [petitioner] stated to Student A's mother, while in the presence of Student A and/or student(s) and/or parents(s), words to the effect of: Your daughter has mental problems.

"4. On or about and between September 1, 2015 and December 14, 2015, [petitioner] stated to Student A's mother words to the effect of:

---

[3] Student A is referred to as "C.S." in both the Award and the parties' papers.

A. Your daughter is a liar.
B. Your daughter lied and you backed her up.
C. I am pretty upset. I want to know what you said to back your daughter up. I want to know what you said to the office.
D. We are not done.
E. I am not done with you.
F. Can you meet with me? The school is failing your daughter. They do not have your best interest at heart and they are f—ing your daughter up.

"5. On or about and between September 1, 2015 and December 14, 2015, [petitioner] failed to follow school protocol in that [petitioner] failed to forward documents regarding special education evaluation for Student A received from Student A's parent, to the administration and/or to the School Based Support Team.

"6. On or about and between September 1, 2015 and December 14, 2015, [petitioner]:
A. Stated to her classroom of students that Student A was sick when she was not in fact sick, thereby violating Student A's right to privacy and/or confidentiality.
B. Used classroom time to have students make get well letters, which was not part of the school curriculum and/or which violated Student A's privacy.
C. Sent said get well letters to Student A's home.
D. Caused Student A and/or the parents of Student A to become confused and/or upset after receiving said get well cards.
E. Sent an application for home school instruction with the heading 'as per the administration' to Student A's home without approval of the principal or any other administrator at the school.

"The foregoing constitutes:
- Just cause for disciplinary action pursuant to Section 3020-a of the Education Law;
- Substantial cause rendering the [petitioner] unfit to perform her obligations properly to the service;
- Conduct unbecoming the [petitioner's] position, or conduct prejudicial to the good order, efficiency or discipline of the service;
- A violation of the by-laws, rules and regulations of the Chancellor, Department, School or District;
- Misconduct;
- Insubordination;
- Neglect of duty;
- Harassment;
- Verbal abuse;
- Just cause for termination."

-3-

*Id.* at 43-44.

Pursuant to Education Law § 3020-a, a hearing began on April 12, 2016, to determine the outcome of the charges. Arbitration is compulsory in Education Law § 3020-a disputes according to petitioner's collective bargaining agreement, and the DOE's rules. Hearing Officer Lisa Brogan, Esq. ("Brogan") was appointed to preside over the proceedings. A hearing took place over four days, during which both parties were entitled to examine and cross-examine witnesses and submit evidence. Petitioner was represented by counsel and testified on her own behalf. Brogan rendered her award on August 15, 2016. She sustained specifications 1 (A), 1 (C), 1 (D), 2, 4 (A), 4 (B), 4 (C), 4 (D), 6 (A), 6 (C) and 6 (D). She dismissed specifications 1 (B), 3, 4 (E), 4 (F), 6 (B) and 6 (E).[4] Brogan found that termination was the appropriate penalty for the sustained charges.

In the Award, Brogan explained that petitioner's charges stem from her interactions with one student, C.S., and C.S.'s family members. The pertinent facts in the Award regarding the interactions are set forth as follows. C.S. suffered from separation anxiety and was reluctant to leave her mother, Austrolyn Owens-Dingle ("Owens-Dingle"), and enter petitioner's classroom. When this occurred, the protocol was for petitioner to call Ms. Graham ("Graham"), the social worker, and if she was not available, to call Dean Slattery ("Slattery"). The Award noted that, for at least the first five weeks of school, C.S. spent the majority of her time outside of petitioner's classroom.

Petitioner spoke to C.S.'s mother within the first couple of days at school. Although what

---

[4] Specification five was withdrawn prior to the hearing.

-4-

transpired in the conversation is in dispute, it is agreed that C.S.'s mother and petitioner were discussing C.S.'s anxiety, and that C.S.'s mother wanted her to be evaluated by the school based support team ("SBST").

On September 25, 2016, Owens-Dingle gave petitioner documents so that petitioner could forward them to the SBST. Although petitioner did forward the documents, Owens-Dingle was initially mistakenly advised that petitioner had not done so.

In any event, on September 30, 2015, the date listed in specification 1, C.S.'s adult sister, Althea Anderson ("Anderson"), took C.S. to school. When C.S. would not enter the classroom, petitioner called Graham and Slattery, who were not available, and then told Anderson to take C.S. to a school aide down the hall. Evidently, Anderson was upset by the situation and relayed to her mother and to the assistant principal, who testified at the hearing, that petitioner refused to take C.S. into the classroom and said that she "didn't have time for her." Petitioner's Exhibit "A," Award at 5.

The school principal, Unal Karakas ("Karakas"), had a meeting with petitioner to discuss the September 30, 2015 incident, and testified during the hearing that petitioner's actions violated the "de-escalation protocols in place at the school, which included calling the main office for help if needed." *Id.* at 6. Karakas stated that the protocols were set forth in Chancellor's Regulation A-411 and the Student Handbook, and that petitioner had neglected her professional duties by not following them.

On October 7, 2015, during a conversation with Owens-Dingle about the September 30, 2015 incident, petitioner allegedly called Anderson a liar. Owens-Dingle testified that petitioner asked her why she was backing up her daughter and what she had told the administration, and

-5-

then had concluded with, "we're not done here." *Id.* Petitioner denied that this had transpired, but conceded that she did tell Owens-Dingle that she had been "written up" by the administration. *Id.* at 7.

Although C.S. was moved to a different classroom, it still was not the appropriate setting for her. As a result, on October 8, 2015, Owens-Dingle again attempted to bring her to petitioner's classroom. Shortly thereafter, Owens-Dingle removed C.S. from the school altogether.

Petitioner subsequently began to call C.S.'s parents at home. The number and nature of the calls were in dispute. At the end of October, Owens-Dingle received a package from petitioner and the class with 27 get well cards from the students in the class. There was also a home-school application in the package. This package, as well as the phone calls, led C.S.'s parents to complain to Karakas that they had been harassed by petitioner. *Id.* Both the parents and C.S. were confused and upset by the package, because C.S. was not sick and barely knew the students in the class. This parent complaint eventually led to the instant charges against petitioner.

After summarizing the situation with C.S. and her family, Brogan set forth the positions of the parties. In brief, the DOE argued that petitioner believed that she knew better than anyone else and that "this attitude has caused her to behave in a manner inconsistent with her responsibilities as a New York City teacher." *Id.* at 10. They continued that petitioner's behavior was motivated by her own personal agenda and that petitioner allowed this agenda to "trump the way she conducts herself when interacting with students as well as family members." *Id.* The DOE believed that petitioner never accepted any responsibility for her actions and always placed

-6-

blame on others.

Petitioner argued that Owens-Dingle only initiated complaints against petitioner based on the mistaken belief that petitioner did not forward C.S.'s documents for her to be evaluated. Petitioner urged "that everything else which occurred here, and specifically Owens-Dingle's view of her, is colored and tainted by this mistaken belief . . . ." *Id.* at 11. Petitioner reiterated that she only expressed concern for C.S. Petitioner argued that she did not harass anyone, but that even if she did, she only did it in the best interests of C.S. Petitioner added that she is a veteran teacher with 26 years of experience who, prior to this incident, never had a single disciplinary letter placed in her file.

Petitioner continued that she was pushing for special education services for other students in the school, and that she has, in the past, filed complaints regarding the school's failure to provide mandated services. As a result, petitioner believed that the charges were "motivated by the administration's own failures," and that they blamed petitioner. *Id.* at 12.

In her 31-page Award, prior to discussing the specifications, Brogan found that Owens-Dingle was a "thoroughly credible witness," but that it was "difficult to believe most of what [petitioner] had to offer in her testimony." *Id.* at 13-14. She also addressed petitioner's argument that "none of this would have happened had Owens-Dingle not been mistaken about [petitioner']s delivery of documents to the SBST." *Id.* at 13. Brogan found that petitioner was overreaching with this premise, and that Owens-Dingle consistently testified that her complaints with petitioner started when Anderson told her what happened in school on September 30, 2015.

As set forth below, for each specification, Brogan went through the facts as presented to her by both parties, and provided a detailed rationale for whether she sustained the specification.

-7-

Specification 1 involves the incident on September 30, 2015, when C.S. was brought to school by Anderson. Brogan found that petitioner had abdicated her responsibilities to C.S. as her teacher, when she left C.S. with the aide who was not equipped to deal with C.S., and when she expected Anderson to take responsibility for the situation. When Brogan asked petitioner why she did not call the main office, as per protocol, petitioner testified that she saw no point in calling the office because someone would answer the phone and tell her that all of the administrators were in a meeting. Brogan stated that this excuse was "absurd," as it assumed that no help would be forthcoming. Brogan sustained specifications 1 (A), (C) and (D), and found that petitioner admitted to all of the conduct charged and that petitioner did not believe there was anything wrong with the way she handled the situation.

In specification 1 (B), the DOE alleged that petitioner stated to Anderson that she did not want to deal with C.S. After this occurred, Anderson called her mother from the hallway and also complained to the assistant principal. Brogan noted that there was "ample, reliable evidence in the record as to what Anderson said to Owens-Dingle." *Id.* at 17. Nevertheless, Brogan did not sustain this subspecification, because Anderson did not testify at the hearing.

In specification 2, petitioner is charged with repeatedly calling Owens-Dingle after being asked to stop. Owens-Dingle testified that petitioner would call and talk "about herself and her issues with the administration rather than C.S. or her well-being." *Id.* at 19. Brogan did not credit petitioner's denials and sustained this specification.

Brogan dismissed specification 3, stating that there was no misconduct, even if petitioner had been careless in having a conversation about C.S. with Owens-Dingle in front others.

Specification 4 (A), (B), (C) and (D) were sustained, as Brogan found that Owens-Dingle

-8-

testified credibly that petitioner made the statements at issue on October 7, 2015, as described above.

Specification 6 stems from petitioner's decision to have her students send C.S. get well cards and include an application for home schooling in the package. Petitioner is charged with violating C.S.'s privacy by telling the students that C.S. was sick, and causing confusion at C.S.'s home because C.S. was not sick. The DOE had argued that petitioner further used class time inappropriately to make the cards, and sent the home-school application to C.S. with a note stating "as per administration," without prior DOE approval.

Petitioner stated that the students in her class were concerned about C.S., and petitioner suggested that they make cards to cheer her up. She claimed that it was not confidential information that C.S. was not at school, and that she never told the class anything about C.S.'s medical condition.

Brogan found the whole matter to be "peculiar." She explained that, according to petitioner, C.S. had trouble entering the classroom almost every day and was taken away. *Id.* at 24. The last date C.S. was seen entering the classroom was October 8, 2015. Brogan thought there was "little to suggest why the students would suddenly, on or about October 27, express concerns about this student who they, apparently, barely knew and had not seen for almost three weeks." *Id.* However, she concluded that there was a "great deal" to suggest why petitioner would send the cards as a way to try and connect with Owens-Dingle. *Id.* Brogan stated that petitioner had been attempting to get information from Owens-Dingle starting on September 30th. After petitioner was told to stop calling Owens-Dingle, these cards presented an opportunity to contact her again.

-9-

In addition, Brogan found that petitioner did not understand the ramifications of her actions. The nature of the cards suggested that petitioner's students were under the impression that C.S. was sick. Brogan found that petitioner was negligent in that petitioner created an impression that "someone experiencing emotional difficulties of separation anxiety and ADHD with which C.S. was struggling should be branded as 'sick.'" *Id.*

Petitioner was asked not to call the house, yet continued to harass Owens-Dingle by sending the package with a personalized note asking Owens-Dingle to let petitioner know if she can be of any help. Brogan found that petitioner showed no regard for a parent's directive, stating "[y]es it is dressed up as a 'humanitarian' effort which, if genuine, would certainly not be a basis for misconduct. But in the context of this entire record I do not believe it to be so." *Id.* at 25. Based on the above, Brogan sustained specifications 6 (A), 6 (C) and 6 (D), but found insufficient evidence that petitioner improperly used classroom time or that she included a note in the package stating "as per administration."

In discussing the penalty, Brogan concluded that she found petitioner guilty of certain specifications, including "dealing with a student who was crying and/or in crisis inappropriately, harassing that student's parent by calling her repeatedly at home in the evening, even after being asked to stop, confronting her publicly in an intimidating fashion, and sending a package to her home which she had reason to know would be unwelcome in light of ongoing tensions between them." *Id.* at 26. Although petitioner denied what transpired and argued that she never did anything more than advocate for C.S. during a time when the DOE was not meeting C.S.'s needs, Brogan did not find these denials to be credible.

During the hearing, petitioner had alleged that the instant charges were made in retaliation

-10-

for her separate commencement of a lawsuit against the DOE.[5]  Although the parties did not

discuss the details, Brogan summarized that the lawsuit involved the school's failure to adequately

respond to children with special needs.  Petitioner believed that when she began advocating for

C.S., the DOE could not tolerate her "meddling" any more and initiated the instant charges.

Although Brogan did believe that petitioner cared for C.S. and her other students, Brogan

found that petitioner did not advocate in a proper manner, as the record demonstrated that

petitioner was more concerned about gathering supporting information for her lawsuit.  For

example, although not included in the charges, Brogan found that Owens-Dingle testified credibly

that petitioner called her on the phone and stated that she knew something about an incident with

C.S. at school, but that she would not tell Owens-Dingle "unless she told her what the

administration had said in their meeting."  *Id.* at 27.  Brogan concluded that petitioner

"overstepped her bounds and that a student and her mother were adversely affected in the

process."  *Id.*

Petitioner, as the teacher, had been advised in the past not make judgments about referrals

to SBST or to discuss evaluations with parents prior to contacting SBST.  Specifically, she had

been warned not to "aggressively insert herself into the business of the SBST."  *Id.*  However,

Brogan found that petitioner "acted directly contrary to the warning she had been given, and then

some."  *Id.* at 28.  Further, Karakas testified that petitioner was told to be respectful in her

interactions with parents.

---

[5] The Award noted that "the record contains reference to a lawsuit initiated by [petitioner] involving the school relating to matters which arose prior to 2015-16 and prior to Principal Karakas' tenure.  The details of that lawsuit are not a matter of record in this case." Award at 4.

-11-

FILED: NEW YORK COUNTY CLERK 12/26/2017 11:30 AM
NYSCEF DOC. NO. Case 1:16-cv-07416-JGK   Document 29-3   Filed 02/05/18   Page 13 of 24

INDEX NO. 654505/2016
RECEIVED NYSCEF: 12/26/2017

While acknowledging that others may have contributed to Owens-Dingle's frustration with the school's inability to address C.S.'s needs, Brogan found that "their conduct neither changes nor excuses [petitioner's]." *Id.* at 29. She concluded that petitioner's unwillingness to accept any responsibility for her actions, or to acknowledge that any action may have been "ill-considered, now drives my penalty determination in this case." *Id.*

Brogan found that, although petitioner is a veteran teacher, her strong views on how things should be done caused petitioner to act "aggressively." She did not believe that petitioner would change her behavior if returned to the classroom. When Brogan asked petitioner "if she could return to the hierarchy of P.S. 195," petitioner replied "no, she had been treated unjustly and the environment was toxic." *Id.* at 30. When asked if she could work in another environment, petitioner responded that it would depend on whether the people there judged her fairly. After hearing these responses, Brogan found that petitioner already created the "pre-supposition that if anything goes wrong at her next position, it will be because of the failure of the people there to be the kind of administrators she thinks they should be." *Id.* Brogan concluded that, although "[i]t is always difficult to terminate a teacher of long-standing," termination is the only appropriate penalty in this situation. *Id.*

Shortly after receiving the Award, petitioner commenced this proceeding seeking to vacate the Award. Petitioner contends that Brogan made inconsistent determinations of credibility, and that this inconsistency demonstrates a bias against petitioner. For example, during the hearing, Brogan discredited petitioner's testimony that she called Owens-Dingle twice, noting that there was a rebuttal letter in the record written by petitioner where petitioner indicates that she made three to four calls. In support of her testimony, petitioner unsuccessfully attempted to introduce

-12-

her phone records into evidence. Petitioner then claims that Brogan did not assess "a similar discord," when Owens-Dingle, who did not have any phone records, stated that petitioner called her four to five times, but the assistant principal testified to receiving a complaint from Owens-Dingle alleging that petitioner had called her six to seven times.

For another example, petitioner alleges that Brogan improperly credited Owens-Dingle's testimony regarding petitioner's aggressive behavior on October 7, 2015. Petitioner maintains that C.S.'s request to return to petitioner's classroom "casts grave doubt on the subject matter and manner of the hallway interaction." Petition at 17.

Petitioner further alleges that Brogan's determinations of fact are not supported in the record. For example, although sending cards home to an absent child is not a prohibited act, petitioner was charged with misconduct. Petitioner claims that Brogan improperly speculated about petitioner's mind-set and motivation for sending the cards. In another instance, petitioner claims that there is no rational basis to sustain the charge that she did not comply with the de-escalation protocol. According to petitioner, as both the principal and assistant principal agree that aides are used to escort students, "the record provides no rational basis to sustain an offense where a teacher utilizes an aide for assistance." Id., ¶ 56.[6]

Petitioner argues that, in forming the Award, Brogan considered information that was not properly part of the hearing. For example, by stating that petitioner "became fixated on her own agenda," Brogan considered petitioner's lawsuit, an inappropriate subject matter for the hearing. In addition, petitioner alleges Karakas's testimony regarding prior warnings regarding another

---

[6] Petitioner argues that there is no rational basis to conclude that she was the reason C.S. did not return to the school. However, this allegation was not included as part of the charges and will not be addressed.

-13-

student and the SBST process was inflammatory, as petitioner was not charged with misconduct. Furthermore, the testimony was irrelevant, as none of the instant charges related to her interactions with the SBST, but to C.S. and her family.

Petitioner argues that the penalty of termination is arbitrary, capricious and shocking to one's sense of fairness. Among other things, petitioner argues that it is excessive and shocking to terminate her after an unblemished 26-year record. Petitioner alleges that there is nothing in the record indicating that she had been previously warned against contacting Owens-Dingle, and that C.S. was still a student in her class when she sent the cards.

Petitioner further claims that Brogan disregarded petitioner's testimony regarding taking responsibility for her actions. Petitioner points to her testimony regarding specification 1, where she stated that, "[i]n retrospect, I should have called the main office. . . . If it could have avoided all of this, yes, I would have done it. But it was my understanding that Ms. Graham would be the key person to come and she was working with [C.S.]." Petitioner's Exhibit "B," tr of hearing at 433-434. Petitioner further testified that she should not have told Owens-Dingle that she had been written up because "information like that should really not be shared with a parent." *Id.* at 451.

According to the DOE, petitioner has failed to establish any basis for vacating the Award. Among other things, the DOE maintains that, other than disagreeing with the credibility determinations, petitioner provides no support for her claim that Brogan's credibility determinations demonstrate a bias against her. Moreover, the DOE alleges that Brogan did credit some of petitioner's testimony, as indicated in the specifications which were dismissed. The DOE further notes that petitioner improperly attempts to reference her phone records, which were not entered into evidence at the hearing. Regarding any alleged bias due to a pending lawsuit, the

-14-

DOE notes that, as indicated in the Award, it was petitioner who notified Brogan of this lawsuit.

In addition, the DOE contends that the Award is rational and not arbitrary and capricious, as Brogan extensively articulated her reasons for sustaining the charges. Finally, the penalty of termination does not shock the conscience, as it is based on the substantiated misconduct, petitioner's lack of remorse and petitioner's inability to change.

In response to the DOE's answer, petitioner reiterates that Owens-Dingle's initial anger at petitioner stemmed from the mistaken belief that petitioner had not turned in C.S.'s paperwork to the SBST.

## DISCUSSION

Pursuant to Education Law § 3020-a (5), CPLR 7511 provides the procedure for reviewing a hearing officer's findings. *City School Dist. of the City of N.Y. v McGraham,* 17 NY3d 917, 919 (2011). CPLR 7511 limits the grounds for vacating an award to "misconduct, bias, excess of power or procedural defects." *Lackow v Department of Educ. (or "Board") of City of N.Y.,* 51 AD3d 563, 567 (1st Dept 2008) (internal quotation marks and citation omitted).

However, where, as here, the parties are subject to mandatory arbitration, "the award must satisfy an additional layer of judicial scrutiny." *City School Dist. of the City of New York v McGraham,* 17 NY3d at 919. The arbitration award must be "in accord with due process and supported by adequate evidence, and must also be rational and satisfy the arbitrary and capricious standards of CPLR article 78." *Lackow v Department of Educ. (or "Board") of City of N.Y.,* 51 AD3d at 567. The person "seeking to overturn an arbitration award faces a heavy burden." *Matter of Fagan v Village of Harriman,* 140 AD3d 868, 868 (2d Dept 2016) (internal quotation marks and citations omitted).

-15-

Credibility Determinations and Alleged Bias

The bulk of petitioner's arguments revolve around petitioner's claim that Brogan applied

unequal credibility standards to the witnesses, and that this application demonstrated Brogan's

bias against petitioner. Petitioner alleges that, although petitioner and the other witnesses

allegedly gave varying testimony about things, only petitioner's testimony was discredited.

However, it is well settled that petitioner's contention regarding the credibility of witnesses is not

a proper ground to vacate an arbitration award. *See e.g. Matter of Saunders v Rockland Bd. of

Coop. Educ. Servs.*, 62 AD3d 1012, 1013 (2d Dept 2009) ("When reviewing compulsory

arbitrations in education proceedings such as this, the court should accept the arbitrators'

credibility determinations, even where there is conflicting evidence and room for choice exists").

Furthermore, Brogan is not required to provide an explanation as to why she allegedly did

not give weight to petitioner's testimony. *See e.g. Matter of Balis v Chubb Group of Ins. Cos.,* 50

AD3d 682, 683 (2d Dept 2008) (citation omitted) ("the path of analysis, proof, and persuasion by

which an arbitrator reaches a conclusion is beyond judicial scrutiny"). In any event, contrary to

petitioner's contention, petitioner's testimony was not entirely discredited. As noted in the

Award, while Brogan sustained some specifications, she dismissed others, noting that the DOE

did not meet its burden of proof or that the witness was not available to testify. In another

example, Brogan took the testimony of petitioner into consideration, adding that, she "does

believe that [petitioner] cared about what happened to C.S." Award at 26.

Petitioner argues that Brogan was biased against her, based on Brogan's credibility

determinations. However, petitioner merely speculates that Brogan is biased, based on

petitioner's dissatisfaction with her actions during the proceeding and ultimate determination. It

-16-

is undisputed that petitioner's mere dissatisfaction with the outcome of the award is "insufficient to establish bias." *Matter of Phillips v Lee*, 115 AD3d 957, 958 (2d Dept 2014) (internal quotation marks and citation omitted).

Further, petitioner maintains that Brogan was biased against her, in that she "used the existence of the lawsuit to make assumptions on [petitioner's] motives . . . ." Petition, ¶ 100. Nonetheless, offering only speculation, petitioner has "failed to meet the high burden of showing, by clear and convincing evidence, that the hearing officer was partial." *Batyreva v N.Y.C. Dept. of Educ.*, 95 AD3d 792, 792 (1st Dept 2012); *see also Matter of Heller v Bedford Cent. Sch. Dist.*, 154 AD3d 754, 755 (2d Dept 2017) ("petitioner failed to present evidentiary proof of actual bias or the appearance of bias on the part of the arbitrator").

*Phone Records*

In an attempt to demonstrate the exact number of phone calls made to Owens-Dingle, petitioner submits her phone records with the petition. It is well settled that "judicial review of administrative determinations is confined to the facts and record adduced before the agency." *Matter of Rizzo v New York State Div. of Hous. & Community Renewal*, 6 NY3d 104, 110 (2005) (internal quotation marks and citation omitted). As this information was not a part of the original record in front of Brogan, it cannot be considered at this time.

The Findings Were Rational and Were Not Arbitrary and Capricious

An action is considered arbitrary and capricious "when it is taken without sound basis in reason or regard to the facts." *Matter of Peckham v Calogero*, 12 NY3d 424, 431 (2009). An arbitration award is considered irrational if there is "no proof whatever to justify the award . . . ." *Matter of Roberts v City of New York*, 118 AD3d 615, 617 (1st Dept 2014) (internal quotation

-17-

marks and citation omitted).

Petitioner argues that Brogan's determinations are irrational because they are not supported by evidence in the record. To start, petitioner alleges that certain information was improperly considered by Brogan at the hearing. As mentioned, petitioner claims that her separate pending lawsuit was an inappropriate subject of the hearing. It appears that petitioner herself advised Brogan of the pending lawsuit, as Brogan noted that it was petitioner who revealed the lawsuit in her assertion that the charges were retaliatory for the lawsuit. *See* Award at 26.

In any event, whether or not the lawsuit was mentioned or considered in the Award is not grounds for vacating the Award, as a Hearing Officer has the authority to determine what weight, if any, to give to the evidence. *Matter of Board of Educ. of Byram Hills Cent. School Dist. v Carlson,* 72 AD3d 815, 815 (2d Dept 2010) ("It was up to the hearing officer to determine what, if any, weight should be given to the evidence, and a court should not substitute its judgment for that of a hearing officer"). Brogan stated that the details of the lawsuit are not part of this record and that she knew little of the pending lawsuit. However, Brogan did conclude that petitioner's actions, whether they were done in an attempt to gather support for her lawsuit, or for other reasons, adversely impacted a mother and student.

Similarly, petitioner contends that Karakas's testimony, which petitioner received prior notice about becoming involved in the SBST process, is not a proper part of the record because it concerned a different student. However, petitioner's argument is without merit. Evidently here, in evaluating the penalty for petitioner's actions, Brogan believed it was necessary to consider whether petitioner had been given prior notice not to interfere with student evaluations for special services. The court is not permitted to "second-guess[]" the "factual or legal determinations of the

-18-

arbitrator." *Azrielant v Azrielant*, 301 AD2d 269, 277 (1st Dept 2002).

Petitioner alleges that "[w]here both the Principal and Assistant Principal lack clarity on whether an aide can escort a student, the record provides no rational basis to sustain an offense where a teacher utilizes an aide for assistance." Petition, ¶ 56. However, there was a rational basis in the record to sustain this specification because, regardless of the other testimony, petitioner's actions demonstrated an "abdication of responsibilities" as C.S.'s teacher. As noted by Brogan, the first step in the school de-escalation protocol was to call the main office for help. Petitioner did not do so, and Brogan found petitioner's excuse, that there was no point as everyone would be busy, "absurd."[7]

Finally, petitioner argues that Brogan failed to consider petitioner's statements of remorse. Petitioner notes that she should have called the main office first in specification 1, and that, under specification 4, she should not have told a parent that she had been written up. The Award noted that, when asked about a future teaching position, petitioner did not offer to make any changes, and advised that she would not be able to return to P.S. 195 and that she would only be able to work at a different school if the people there judged her fairly.

Although Brogan may have not addressed petitioner's alleged remorse for some, but not all, of her actions, the record presented at the hearing rationally supports the finding that, on the whole, petitioner denied any wrongdoing and would not change. Petitioner provides no basis to disturb the Award. *See e.g. Matter of Carroll (Pirkle)*, 296 AD2d 755, 756 (3d Dept 2002) (internal quotation marks omitted) ("In other words, we must determine whether there is a rational

---

[7] Petitioner also contends that the charges stemmed from Owens-Dingle's mistaken belief that petitioner did not forward C.S.'s documents to the SBST. Brogan addressed this argument in the Award at length and did not find any merit to it.

basis in [the whole record] for the findings of fact supporting the [Hearing Panel's recommendation]."

<u>Penalty Appropriate and Not Shocking</u>

Petitioner argues that the penalty of termination is shocking, given that she has been teaching for 26 years with no prior disciplinary history. In support of this argument, among other cases, petitioner cites *Matter of Broad v New York City Bd./Dept. of Educ.* (50 Misc 3d 384, 401 [Sup Ct, NY County 2015]), where the court found, among other things, that the penalty of termination shocked the conscience, given the nature of the specifications and the teacher's satisfactory 27 year history. However, this case was reversed, and the Court found that the "penalty of termination from employment does not shock our sense of fairness." *Matter of Broad v New York City Bd./Dept. of Educ.*, 150 AD3d 438, 438 (1st Dept 2017). The Court further held that the "arbitrator's decision had a rational basis and was supported by adequate evidence." *Id.*

Brogan considered the fact that petitioner is a "veteran" teacher and found that was not a reason to reduce the penalty. Contrary to petitioner's contention, courts have found that, in certain circumstances, a lack of prior disciplinary history is no basis to reduce the penalty. *See e.g. Matter of Patterson v City of New York*, 96 AD3d 565, 566 (1st Dept 2012) (Penalty of termination upheld for teacher with no prior disciplinary history, charged with the misconduct of using a false address to avoid paying New York City income taxes); *see also Matter of Ajeleye v New York City Dept. of Educ.*, 112 AD3d 425, 425-426 (1st Dept 2013) (internal citation omitted) ("The penalty of termination does not shock one's sense of fairness. The record shows that the Hearing Officer considered the seriousness of the charges, as well as petitioner's lack of prior disciplinary history during his 14-year career with the [DOE] and the likelihood that petitioner

-20-

would not correct his inappropriate behavior."

Petitioner further maintains that the penalty is shocking, given that the alleged misconduct does not violate any rule or regulation. Brogan did find, among other things, that petitioner violated the de-escalation protocol by not calling the main office. In any event, petitioner's argument is without merit. Courts have upheld terminations, where, like here, a petitioner was charged with conduct unbecoming a teacher. Moreover, as noted by the court during oral argument, the phone calls to Owens-Dingle should not have happened. "What's the difference if it's two, three or four?" Tr of oral argument at 25; *see e.g. Matter of Gongora v New York City Dept. of Educ.*, 98 AD3d 888, 890 (1st Dept 2012) ("[T]he penalty of termination, notwithstanding petitioner's prior lack of disciplinary history, does not shock our sense of fairness. Petitioner's actions of calling a student at home, asking her if she was happy with the results of an examination, and then asking her out on a date, clearly constituted unacceptable behavior").

In addition, petitioner argues the penalty was excessive, given that the prior notice she received about her behavior was irrelevant to the instant charges. The Award indicated that the warning petitioner received regarding another student was directly related to her interactions with C.S. and her family. Regardless, petitioner should not need a warning to know that she is required to speak to parents professionally, and that she is not the person who makes determinations for special education. *See e.g. Lackow v Department of Educ. (or "Board") of City of N.Y.*, 51 AD3d at 568 ("Even without a warning about the possibility of dismissal, certain conduct, such as petitioner's, is clearly unacceptable. Moreover, being admonished not to repeat prior behavior patterns was sufficient warning").

Petitioner further argues that Brogan should have given her an alternative penalty to

-21-

termination. However, there is no basis to disturb the recommended penalty, as Brogan carefully explained the rationale for the penalty, even in light of petitioner's long-standing career. *See e.g. Matter of Asch v New York City Bd./Dept. of Educ.*, 104 AD3d 415, 421 (1st Dept 2013) ("Having seen and heard the witnesses, [the hearing officer] was in a far superior position than the motion court to make a determination as to an appropriate penalty to impose").

"An administrative penalty must be upheld unless it is so disproportionate to the offense as to be shocking to one's sense of fairness, thus constituting an abuse of discretion as a matter of law." *Matter of Idahosa v Farmingdale State Coll.*, 97 AD3d 580, 581 (2d Dept 2012). Here, according to Brogan, petitioner failed to comprehend the seriousness of her actions and their implications and blamed everyone else involved. Petitioner testified not only that she could not return to her job, but placed restrictions on a potentially new position. Given the record and the charges upheld against petitioner, and considering petitioner's denial of wrongdoing, this Court cannot conclude that the penalty of termination shocks one's sense of fairness.

This Court has considered petitioner's remaining contentions and finds them to be without merit.

Award Upheld and Confirmed

Accordingly, petitioner's request to vacate the Award is denied in its entirety, and pursuant to CPLR 7511 (e), the Award dated August 15, 2016 is confirmed.

-22-

**CONCLUSION**

Accordingly, it is hereby

ORDERED and ADJUDGED that the petition is denied and the proceeding is dismissed, and pursuant to CPLR 7511 (e), the Award dated August 15, 2016 is confirmed.

Dated: December 19, 2017

ENTER:

_____
J.S.C.

**Shlomo Hagler**
*J.S.C.*

-23-