USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/14/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNA DENICOLO,

                    Plaintiff,

        - against -

THE BOARD OF EDUCATION OF THE CITY
OF NEW YORK et al.,

                    Defendants.

16 Civ. 7416 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Anna Denicolo, brings this action against the Board of Education of the City of New York ("BOE") and four individual BOE employees:  Unal Karakas, Xiomara Fernandez, Jeffrey Eason, and Desiree LaFontaine in their individual and official capacities (collectively, "defendants").  The plaintiff alleges retaliation in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), § 504 of the Rehabilitation Act of 1973 ("RA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the First Amendment of the United States Constitution, and Article 1 § 8 of the New York State Constitution.

The defendants move to dismiss all of the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The defendants argue that the claims are barred by the doctrine of collateral estoppel and that the allegations otherwise fail

1

to state a claim.  The defendants also move to dismiss the plaintiff's RA and ADA claims against the individual defendants. For the reasons explained below, the defendants' motion is **granted in part and denied in part.**

I.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While courts should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of

the allegations contained in the complaint is inapplicable to legal conclusions." Id.

A court may also consider documents incorporated by reference in the complaint as well as documents the plaintiff either had in the plaintiff's possession or had knowledge of and upon which the plaintiff relied in bringing suit. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). "A court may [also] take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." Evans v. N.Y. Botanical Garden, No. 02cv3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002); see also Zapotocky v. CIT Bank, N.A., No. 17cv6377, 2018 WL 3104090, at *2 (S.D.N.Y. June 22, 2018).

## II.

The following facts are taken from the plaintiff's Complaint and are accepted as true for the purposes of this motion to dismiss.

The plaintiff was a tenured school teacher who was a DOE employee for over twenty-five years. (Compl. ¶¶ 1, 8.) She was fired on August 15, 2016. (Id. ¶ 1.) Two years before her termination, on September 24, 2014, the plaintiff filed a complaint with the Office of Civil Rights for the United States

Department of Education ("OCR").[1]  (Id. ¶ 32.)  In the complaint, the plaintiff alleged that P.S. 195 – the school where she worked – failed to provide adequate services for, or proper evaluation of, special-needs students.  (Id. ¶¶ 33-35.)  After several months, on April 6, 2015, OCR asked the plaintiff if she would agree to mediate her claim against the school.  (Id. ¶ 37.)  The plaintiff declined.  (Id.)  OCR asked again on September 18, 2015.  (Id. ¶ 40.)  The plaintiff again refused to mediate and asked OCR to continue its investigation.  (Id.)

Eleven days after the plaintiff's second refusal to mediate, on September 29, 2015, she began receiving letters of reprimand from her school.  (Id. ¶ 42.)  The letters alleged misconduct and unprofessional behavior for a variety of reasons, including neglect of her professional duties, unprofessional conduct, general misconduct, unsatisfactory lesson plans, and insubordination.  (Id. ¶ 45.)  Within a month of her decision not to mediate, she also received a negative performance evaluation.  (Id. ¶ 45(d).)  In her entire career, she had never before received a reprimand letter or a negative evaluation.[2]

---

[1]  This was the second complaint the plaintiff filed with OCR about her school.  (Compl. ¶ 31.)

[2]  The plaintiff had "never [previously] received a letter of reprimand or discipline and ha[d] never been rated below satisfactory or effective." (Compl. ¶ 44.)

The plaintiff received sixteen[3] letters of reprimand and three negative evaluations over the following five months. (Id. ¶¶ 42, 44-45.)

Approximately five months after receiving her first letter of reprimand, on February 18, 2016, the plaintiff received a letter from the DOE informing her that she was being brought up on disciplinary charges under New York State Education Law § 3020-a. (Id. ¶ 45(s).) The letter informed her that she was banned from all DOE schools during the pendency of the action. (Id.) This letter came only a few days before OCR was scheduled to visit P.S. 195 to investigate the plaintiff's complaint. (Id. ¶ 48.) Because she was barred from the school, she was not present during OCR's investigation. (Id.)

The plaintiff's § 3020-a proceeding took place over four days in April 2016. (J.W. Reiter Decl. Ex. A, at 1 [hereinafter § 3020-a Opinion].) The charges brought against the plaintiff were all based on the plaintiff's interactions with one student and that student's family. (Id.; Compl. ¶ 45.) The allegations were: (1) the plaintiff failed to follow school protocol when the student would not enter the classroom and the plaintiff

---

3    In the Complaint, the plaintiff alleged that she had received twenty letters of reprimand. (Compl. ¶ 42.) However, at oral argument counsel for the plaintiff informed the Court that there had only been sixteen letters, three of which were the basis for a § 3020-a hearing described in the subsequent paragraphs in the text.

contacted a school aide to take care of the student; (2) the plaintiff repeatedly called the student's parent; (3) the plaintiff told the student's mother, "[y]our daughter has mental problems"; (4) the plaintiff spoke inappropriately to and antagonistically towards the student's mother; and (5) the plaintiff had her students write get well cards to the student and sent the letters and an application for home school instruction to the student's home. (§ 3020-a Opinion at 2-3.) These charges were based on only three of the sixteen reprimands the plaintiff received between 2014 and 2016. (See Compl. ¶45(c), (f), (p).) During the hearing, the plaintiff noted that she believed she had been targeted by the school because she had lodged complaints against it. (§ 3020-a Opinion at 11.) She argued that her complaints caused the administration to view her as a "meddler" and "someone who stuck her nose where it didn't belong." (Id.)

On August 15, 2016, the plaintiff's § 3020-a hearing concluded. (Compl. ¶ 45(u).) The hearing officer found that the plaintiff was guilty of dealing with the student at issue inappropriately, harassing that student's parents, and sending unwelcome packages to the student's home. (§ 3020-a Opinion at 19-30.) Based on the finding of misconduct, the plaintiff's employment was terminated. (Id. at 30.) The hearing officer

made no specific finding on whether the school had retaliated against the plaintiff.

The plaintiff then filed a proceeding in the New York State Supreme Court pursuant to Article 75 of the New York Civil Practice Law and Rules, seeking to vacate the hearing officer's decision. (Compl. ¶ 57.) The Supreme Court denied the petition. (J.W. Reiter Decl. Ex. C, at 23.) The plaintiff then appealed that ruling to the Appellate Division of the Supreme Court where that appeal is still pending. (See A. Fuchsberg Decl. Ex. 6.)

### III.

The defendants move to dismiss the Complaint on three grounds. First, they argue that the plaintiff is collaterally estopped from bringing her retaliation claim because it was already litigated during the § 3020-a proceeding. Second, they claim that the plaintiff has not pleaded sufficient facts to succeed on her retaliation claims. And third, they assert that there is no individual liability for violation of the RA and ADA.

### A.

The defendants argue that all of the plaintiff's claims should be dismissed under the doctrine of collateral estoppel. They contend that the plaintiff is attempting to relitigate claims that she lost after a full and fair § 3020-a hearing.

The plaintiff responds that her retaliation claim was "neither actually nor necessarily decided" at the § 3020-a hearing and, therefore, collateral estoppel does not apply.

The doctrine of collateral estoppel precludes a party from relitigating an issue that the party previously litigated and lost. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979). Federal courts apply the collateral estoppel rules of the state that rendered the prior judgment. LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002). "Under New York law, collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same.'" Id. (quoting Ryan v. N.Y. Tel. Co., 467 N.E.2d 487, 490 (N.Y. 1984)). "New York courts apply collateral estoppel, or issue preclusion, 'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.'" Id. (quoting Parker v. Blauvelt Volunteer Fire Co., 712 N.E.2d 647, 651 (N.Y. 1999)). A § 3020-a hearing is a "quasi-judicial" proceeding and may be preclusive if the criteria of collateral estoppel are met. Burkybile v. Bd. of Educ., 411 F.3d 306, 311-

14 (2d Cir. 2005) (holding that facts found at a § 3020-a
hearing precluded administrator's § 1983 retaliation claim).

Section 3020-a decisions are not generic or interchangeable
– they vary in their determinations of fact and law and,
therefore, in their preclusive effect.  Whether a § 3020-a
determination has preclusive effect depends on the precise issue
determined as compared to the issue in the subsequent
litigation.  Compare, e.g., Mazur v. N.Y.C. Dep't of Educ., 53
F. Supp. 3d 618, 630-31 (S.D.N.Y. 2014) (finding collateral
estoppel barred the plaintiff's disability discrimination and
hostile work environment claims where the hearing officer in
the § 3020-a hearing necessarily decided those issues with
specific reference to the plaintiff's central defenses),
with Washington v. N.Y.C. Dep't of Educ., No. 16cv9588, 2017 WL
4687982, at *8 (S.D.N.Y. Oct. 16, 2017) (holding that although
the discrimination claim raised in § 3020-a hearing was
preclusive of the issue in federal court, the retaliation claim
was not because the hearing officer only referred to
"retaliation" once in the opinion and never "explicitly
addressed or ruled on the merits of any retaliation argument"),
aff'd sub nom. Washington v. N.Y.C. Dep't of Educ., No.
17cv3776, 2018 WL 3342324 (2d Cir. July 9, 2018).

In this case, the defendants cite to several instances
where the plaintiff argued retaliation at her § 3020-a hearing.

(See Defs.' Mem. at 11-13.) And the defendants also argue that the hearing officer determined that the plaintiff's termination was warranted.[4] (Id.) But the defendants are unable to point to any decision by the hearing officer on retaliation, and the Court has similarly found no decision by the hearing officer on the issue of retaliation.

At the § 3020-a hearing, what the hearing officer did decide was that the plaintiff acted improperly, (§ 3020-a Opinion at 25), that she had committed misconduct, (id. at 26), and that her actions warranted termination, (id. at 30). But the hearing officer did not decide whether the plaintiff was subjected to retaliatory actions by the defendants. (See id. at 26-31.) There is no indication that the hearing officer addressed, much less decided, whether the charges leading to the plaintiff's termination were driven, even in part, by retaliatory intent. Thus, the defendants' collateral estoppel argument fails. See Leon v. N.Y.C. Dep't of Educ., 612 F. App'x 632, 635 (2d Cir. 2015) (reversing the district court's dismissal based on collateral estoppel because "[t]here [wa]s no

---

[4]    Whether the plaintiff's termination was warranted would not preclude her action here. A finding that a plaintiff's termination was warranted does not "preclude the possibility of termination motivated by unlawful animus," such that a jury could find for the plaintiff on the retaliation claim. Garcia v. Yonkers Bd. of Educ., 188 F. Supp. 3d 353, 363 (S.D.N.Y. 2016); see also Leon v. N.Y.C. Dep't of Educ., 612 F. App'x 632, 635 (2d Cir. 2015); Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 47 (2d Cir. 2014).

indication that the Section 3020-a hearing addressed, much less actually decided, whether the charges leading to [the plaintiff's] termination were driven, even in part, by discriminatory or retaliatory intent"); see also Washington, 2017 WL 4687982, at *8-9 (holding the plaintiff's retaliation claims were not barred by collateral estoppel because the § 3020-a hearing officer never explicitly addressed or ruled on the merits of any retaliation argument); Giove v. City of New York, No. 15cv2998, 2018 WL 736008, at *3-4 (E.D.N.Y. Feb. 5, 2018) (same); Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 471 (S.D.N.Y. 2011) (same); Morey v. Somers Cent. Sch. Dist., No. 06cv1877, 2007 WL 867203, at *5 (S.D.N.Y. Mar. 21, 2007) (same).

Moreover, there is another basis for rejecting the defendants' collateral estoppel argument. The plaintiff's § 3020-a hearing involved only a small fraction of the reprimands and none of the negative evaluations that the plaintiff received. Indeed, the hearing only produced evidence of the plaintiff's interactions with one child resulting in three of her sixteen reprimands. (See Compl. ¶ 45(c), (f), (p).) Therefore, the hearing officer had no occasion to consider whether the thirteen additional reprimands and the three negative evaluations were retaliatory. Those incidents of

alleged retaliation could not be precluded by collateral estoppel.

Accordingly, the defendants' motion to dismiss based on collateral estoppel is **denied**.

**B.**

The defendants also argue that the plaintiff has not pleaded sufficient facts to state a claim under the ADA, the RA, the NYSHRL, the NYCHRL, the First Amendment of the United States Constitution, or Article 1 § 8 of the New York State Constitution.

**1.**

The plaintiff has withdrawn her claim under the ADA. Therefore, the defendants' motion to dismiss that claim is **granted with prejudice**.

**2.**

The defendants argue that the plaintiff has failed to state a claim for retaliation under the RA and the NYSHRL. To establish a prima facie case of retaliation under the RA and NYSHRL, the plaintiff must show that (1) she engaged in a protected activity, (2) her employer was aware of this activity, (3) the employer took an action disadvantaging the plaintiff, and (4) a causal connection exists between the alleged adverse action and the protected activity. Treglia v. Town of Manlius,

313 F.3d 713, 719 (2d Cir. 2002); see also McGuire-Welch v. House of the Good Shepherd, 720 F. App'x 58, 62 (2d Cir. 2018).

The defendants do not contest the first element; that is, they admit the plaintiff engaged in a protected activity by complaining to OCR and by declining to mediate her claim.

With respect to the second element, the plaintiff has pleaded sufficient facts to show that the defendants were aware of her complaints. The plaintiff alleges exactly that. (Compl. ¶ 41 ("Plaintiff's election to pursue her [OCR] complaint was known to Defendants.").) That allegation is wholly plausible. The DOE was the object of the ongoing investigation and was presumably aware of those proceedings. Moreover, the plaintiff declined two offers to mediate and it is plausible that the DOE – the other party of the mediation – would have also been asked to participate in the mediations. Thus, the plaintiff has pleaded sufficient facts to show that the defendants knew about her complaint to OCR and her decision not to mediate.

With respect to the third element, the plaintiff has sufficiently pleaded that adverse actions were taken against her. The defendants contend that the only adverse actions against the plaintiff were (1) the § 3020-a charges and hearing, and (2) the termination of the plaintiff's employment. The defendants' assertion ignores the deluge of reprimand letters and negative evaluations that the plaintiff received after

13

declining to mediate her OCR claim, all of which constitute adverse actions. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (holding that a material adverse action is an action "a reasonable employee would have found" to be "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge").[5]

Here, the plaintiff alleges she received sixteen letters of reprimand between September 29, 2015, and February 18, 2016. (Compl. ¶ 45.) These letters alleged a range of misconduct, including neglect of her professional duties, unprofessional conduct, general misconduct, unsatisfactory lesson plans, and insubordination. (Id.) She also claims that she received three negative evaluations. (Id. ¶ 45(d).) These reprimands and negative performance evaluations qualify as adverse actions under the RA and NYSHRL.[6]

---

[5]    Although Burlington involved Title VII claims, courts have applied the definition of adverse action from that case to RA and NYSHRL retaliation claims. See Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 25 (2d Cir. 2014) (NYSHRL claim); Troeger v. Ellenville Cent. Sch. Dist., No. 15cv1294, 2016 WL 5107119, at *16 (N.D.N.Y. Sept. 20, 2016) (RA claim).

[6]    At oral argument defense counsel asserted that negative letters to an employee's file should not be considered adverse actions. As support, defense counsel cited Sotomayor v. City of New York, No. 10cv3411, 862 F. Supp. 2d 226 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013). That case does not support the defendants' position. In Sotomayor, the court noted that that negative employment evaluation letters "must generally trigger other negative consequences to the terms and conditions" of the plaintiff's employment in order to qualify as a materially adverse change. Id. at 254. However, this was in the context of the court's discussion of federal discrimination claims, not retaliation claims. Id. Indeed, the court went on to state: "Unlike in discrimination claims, an adverse employment action

14

The plaintiff has also sufficiently pleaded the fourth element, causation. Causation may be shown "directly, through evidence of retaliatory animus by the person who initiated the adverse action against the plaintiff," or "indirectly, by showing that the retaliatory or discriminatory action was taken shortly after the protected activity." Smith v. City of New York, No. 16cv9244, 2018 WL 3392872, at *7 (S.D.N.Y. July 12, 2018) (collecting cases). "A time lapse of less than one month between the date the supervisor learns of the protected activity and the date the supervisor disciplines the employee is sufficiently short to justify an inference of causation." Id. (citing Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) ("The three-week period from [the plaintiff's] complaint to her termination is sufficiently short to make a prima facie showing of causation through temporal proximity.")).

In this case, the plaintiff declined the second offer to mediate her complaint with OCR on September 18, 2015, and this was followed eleven days later with the first letter of reprimand. She also received her first negative performance evaluation within a month of declining to mediate. This stunningly short temporal proximity is sufficient to state a causal connection.

---

need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim." Id. at 261 (quotation marks omitted).

Thus, the plaintiff has stated a claim for retaliation under the RA and the NYSHRL. Accordingly, the defendants' motion to dismiss the RA and the NYSHRL retaliation claims is **denied.**

### 3.

The defendants argue that the plaintiff has failed to state a claim for retaliation under the NYCHRL. The Second Circuit Court of Appeals has held that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims." Mihalik v. Credit Agricole Cheuvreux N. Am. Inc., 715 F.3d 102, 109 (2d Cir. 2013). However, the NYCHRL was intended to be more protective than federal and state law claims. See Smith, 2018 WL 3392872, at *7. Thus, where a plaintiff has stated a claim for retaliation under the RA and NYSHRL, she has also stated a claim under the NYCHRL.

Accordingly, the defendants' motion to dismiss the retaliation claim against them pursuant to the NYCHRL is **denied.**

**4.**

The defendants argue that the plaintiff has not alleged a retaliation claim under the First Amendment to the U.S. Constitution[7] or New York State Constitution Article I § 8.

The analysis under the First Amendment and New York's Article I § 8 are the same. Brinn v. Syosset Pub. Library, 61 F. Supp. 3d 247, 255 n.3 (E.D.N.Y. 2014), aff'd, 624 F. App'x 47 (2d Cir. 2015). A plaintiff alleging violation of these provisions must allege that the plaintiff (1) has engaged in protected First Amendment activity, (2) suffered an adverse action, and (3) there was a causal connection between the protected activity and the adverse action. Lee-Walker v. N.Y.C. Dep't of Educ., 220 F. Supp. 3d 484, 490 (S.D.N.Y. 2016), aff'd sub nom. Lee-Walker v. N.Y.C. Dep't of Educ., 712 F. App'x 43 (2d Cir. 2017). As explained above, the second and third elements are satisfied: the plaintiff has sufficiently pleaded that she suffered an adverse action and that her complaints to OCR were the cause. Thus, the only issue here is whether her speech was protected.

---

[7]     A violation of the First Amendment to the United States Constitution by state officials is actionable under 42 U.S.C. § 1983. To allege municipal liability, the plaintiff would be required to show a "policy or custom" "inflict[ed] the injury that the government as an entity is responsible [for] under § 1983." See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). The plaintiff did not specifically cite to § 1983 in her Complaint and the defendants did not cite that deficiency or the possible reasons why no claim for violation of § 1983 has been stated. These issues, therefore, must await further briefing.

The Supreme Court in Garcetti v. Ceballos clarified that in order to bring a claim for violation of the First Amendment a public employee must first establish that the employee spoke "as a citizen" on "a matter of public concern." 547 U.S. 410, 419 (2006). If not, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Id.

When a public employee airs a complaint pursuant to a clear duty to report imposed by law or employer policy, the employee is speaking as an employee and not as a citizen. Id. at 426. In such cases, the First Amendment does not protect the employee's speech from discipline or retaliation by the employer. Id. However, if the employee goes outside of the established institutional channels in order to express a complaint or concern, the employee is speaking as a citizen and the speech is protected by the First Amendment. See id.; see also Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York, 593 F.3d 196, 198 (2d Cir. 2010). The determination of whether speech was made pursuant to an official duty is "a practical one," Garcetti, 547 U.S. at 424, and requires consideration of various facts that may not be before the court at the motion to dismiss stage, see, e.g., Kelly v. Huntington Union Free Sch. Dist., 675 F. Supp. 2d 283, 293-94 (E.D.N.Y. 2009) (holding that, at the motion to dismiss stage, "the Court

cannot conclude . . . that plaintiffs' speech . . . was made pursuant to official duty"). It is not dispositive that a plaintiff's speech is related to her job. See <u>Garcetti</u>, 547 U.S. at 421 ("The [speech] concerned the subject matter of [plaintiff's] employment, but this, too, is nondispositive. The First Amendment protects some expressions related to the speaker's job.").

In this case, the Court cannot yet determine simply from the allegations in the Complaint that the plaintiff's protests were made pursuant to a clear duty to report, and were thus made as an employee rather than a citizen. See, e.g., <u>Kelly</u>, 675 F. Supp. 2d at 293. The plaintiff in this case was a general-education teacher who complained about the treatment of special-needs students. (Compl. ¶¶ 26, 28.) The defendants argue that the plaintiff's complaint "stemmed directly from her job as a teacher" and is, therefore, unprotected. The plaintiff counters that it is not within the duty of a general-education teacher to complain about the curriculum of special-needs students and that she went outside of established institutional channels by complaining directly to the federal government. At this stage, the Court cannot determine that the plaintiff's complaints were part of her official duties. Therefore, the motion to dismiss cannot be granted on that basis.

The defendants also argue that the plaintiff's complaints were not protected by the First Amendment because they did not involve a matter of public concern. "The Supreme Court has defined 'a matter of public concern' as one that 'relat[es] to any matter of political, social, or other concern to the community.'" Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). "The inquiry into the protected status of speech is one of law, not fact." Connick, 461 U.S. at 148 n.7. The Court of Appeals for the Second Circuit has held that "[a]n employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking upon matters only of personal interest." Sousa, 578 F.3d at 174 (internal quotation marks omitted). However, "it does not follow that a person motivated by a personal grievance cannot be speaking on a matter of public concern." Id. "[A] speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern." Id. at 173. Instead, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48; see also Kelly, 675 F. Supp. 2d at 293-94.

Here, the plaintiff complained about her school's failure to provide required services to special-needs students. (Compl.

¶¶ 33-34.)  Speech that touches on the quality of public

education - and, more specifically, on the quality of education

provided to special-needs children - may be a matter of public

concern.  See McGuire v. Warren, 207 F. App'x 34, 36 (2d Cir.

2006) (holding that speech by a teacher about the proper method

for providing educational services to special-needs children

"might well be a matter of public interest"); see also Bernheim

v. Litt, 79 F.3d 318, 325 (2d Cir. 1996) (reversing the district

court's grant of a motion to dismiss where plaintiff teacher

complained about principal's misrepresentation of students' test

scores and its effect on "the quality of education provided by

the public school").  Therefore, the plaintiff has sufficiently

alleged that her statements concerned matters of public concern.

See Kelly, 675 F. Supp. 2d at 294 ("Although defendants argue

that these are nothing more than job-related complaints by

disgruntled employees, the Court cannot conclude at th[e motion

to dismiss] stage that the speech does not address matters of

public concern.").

Accordingly, the defendants' motion to dismiss the

retaliation claim against them pursuant to the First Amendment

and New York Constitution Article I § 8 is **denied**.

**C.**

Finally, the defendants argue that the RA and ADA do not

provide for individual liability.  In her opposition papers, the

21

plaintiff withdrew all of her ADA claims as well as her RA claims against the individual defendants for individual liability. At oral argument, the plaintiff also agreed to withdraw her RA and ADA claims against the individual defendants in their official capacities.

Therefore, the defendants' motion to dismiss the plaintiff's RA and ADA claims against the individual defendants is **granted with prejudice.**

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. As explained above, the defendants' motion to dismiss is **granted in part and denied in part.**

**SO ORDERED.**

Dated:     New York, New York
           September 14, 2018

                                John G. Koeltl
                          United States District Judge