```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ANNA DENICOLO,

             Plaintiff,

        v.                              16 CV 7416 (JGK)

THE BOARD OF EDUCATION OF THE
CITY OF NEW YORK and/or the
DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK,

             Defendants.

------------------------------x
                                        New York, N.Y.
                                        June 24, 2019
                                        11:30 a.m.

Before:

                HON. JOHN G. KOELTL,

                                        District Judge

                     APPEARANCES

JACOB  FUCHSBERG LAW FIRM
     Attorney for Plaintiff Denicolo
BY:  EDWARD J. HYNES

NEW YORK CITY LAW DEPARTMENT
     Attorneys for Defendants BOE/Dept. of Ed
BY:  KATARINA SOULIOPOLOUS
```

1          (Case called)
2          MR. HYNES:  Good morning, your Honor.
3          Edward Hines, Jacob Fuchsberg law firm for the
4   plaintiff and plaintiff, Ms. Denicolo, is also present.
5          THE COURT:  OK.
6          MS. SOULIOPOLOUS:  Good morning, your Honor.
7          Attorney Katarina Souliopolous, here from the Office
8   of the Corporation Counsel, appearing on behalf of all
9   defendants.
10         THE COURT:  OK.  The matter is on today because the
11  plaintiff's law firm wants to withdraw from representing the
12  plaintiff.
13         Ms. Denicolo, any objection to your lawyers
14  withdrawing?
15         MS. DENICOLO:  Your Honor, with your permission --
16         THE COURT:  Could you please keep your voice up and
17  speak into the microphone.  Thank you.
18         MS. DENICOLO:  Your Honor, with your permission I'd
19  like to speak to Mr. Fuchsberg's withdrawal document 5658
20  received on June 6, 2019.
21         THE COURT:  Please keep your voice up.
22         MS. DENICOLO:  On March 17, 2016, I had my fist
23  meeting with Mr. Fuchsberg and then attorney, Allison Stein.  I
24  informed them that I had been advocating for children since
25  2010 and had filed 4 OCR complaints against the school PS 195

1   and the school employee from 2010 to 2016.  The OCR complaints
2   pertained to students with disabilities and harassment.  The
3   school was cited by OCR for student disability violations and
4   the principal was cited for making intimidating comments at a
5   staff meeting.
6            In 2013/14, along with several parent we filed two
7   extensive reports with OCR including retaliation.  And as of
8   today OCR is still pending conclusion of this investigation.
9            Mr. Fuchsberg and Ms. Stein agreed I had a strong case
10  for retaliation whistleblowing.  And during a meeting on
11  August 17, 2016, I was informed Ms. Stein would be the attorney
12  on the case and would be working on the appeal and I was
13  charged seven thousand dollars.
14           On February 1, 2018, I was introduced to Mr. Hynes as
15  my new attorney.  He asked Mr. Fuchsberg at the time if I had
16  filed with EEOC.  Mr. Fuchsberg state no.  As a legal matter,
17  no information had been ever been provided or discussed
18  regarding EEOC and so I gave it little importance.
19           On January 4, 2019 during my meeting with Mr. Hynes
20  and after several inquiries, Mr. Hynes finally informed me that
21  the BOE had informed him that they had not been able to contact
22  or locate the parents who filed OCR complaints in 2013/14 and
23  could not release any information to him pertaining to parent
24  locations or school records.
25           On February 11, 2019 I e-mailed Mr. Hynes and asked

1    him to contact OCR to follow-up on the status of their
2    investigation.  He forwarded their e-mail to me confirming the
3    investigation is still pending and ongoing.  There were several
4    events prior to Mr. Hynes' arrival to the firm which caused
5    concern.  I last spoke to Ms. Stein on February 7, 2017.  And
6    from February 8 through April 20, 2017, I had not heard from
7    the Fuchsberg firm.
8            On April 21 I called Mr. Fuchsberg who stated
9    Ms. Stein left the firm and my new attorney was Ms. Adams.  I
10   later learned Ms. Adams was hired in February 20, 2017.  I felt
11   completely abandoned by this news.  Neither Ms. Stein nor
12   Mr. Fuchsberg contacted me regarding this change and it felt
13   troublesome to me.
14           I was introduced to Ms. Adams on May 3, 2017 when
15   meeting Ms. Adams she was unable to provide me with my case
16   status.  She stated, quote, I haven't caught up yet at this
17   meeting.  Mr. Fuchsberg informed me that there would be a delay
18   and, quote, was suggested by the judge that we wait until the
19   decision of the appeal go through before proceeding with the
20   civil case, and based on the decision there would have to file
21   different motions.
22           On May 22, 2017, I attended the Article 75 or oral
23   argument appeal hearing.  Ms. Adams was present.  Judge Hagler
24   spoke to both parties' attorneys at the bench.  The BOE did not
25   follow procedure regarding their reply and Judge Hagler

1  rescheduled the hearing for July 24, 2017.
2          Ms. Adams was absent.  Judge Hagler addresses
3  Mr. Fuchsberg at the bench.  Mr. Fuchsberg did not submit his
4  rebuttal at this hearing.  Judge Hagler agrees to hear the
5  argument and reschedule the hearing for September 18, 2017.
6          On September 18, 2019 Ms. Adams is present -- sorry --
7  2017 Ms. Adams is present for the Article 75 hearing but only
8  Mr. Fuchsberg will present.  There were several inaccurate
9  statements made by Mr. Fuchsberg in his oral delivery that were
10 very concerning to me.  On page 2, line 22, 23 and 24 of the
11 transcript Mr. Fuchsberg says, quote, and so she is now in a
12 new school.  I'm not sure it was her first year or not.  It may
13 have been or maybe her second year.  And of quote.
14         Mr. Fuchsberg's statement discards everything that
15 occurred at the school five years prior to termination.  Later
16 when I requested court hearing transcripts of the May 22, 2017
17 and July 24, 2017 court sessions, Ms. Adams stated there were
18 none for those two dates.
19         Another inaccurate statement made by Mr. Fuchsberg at
20 the September 18, 2017 Article 75 hearing, appears on page 18,
21 line nine and 10 of the transcript.  Mr. Fuchsberg says, quote,
22 by the way, she used to be a special education teacher at
23 another school.  On page 20, line 25 and 26 Judge Hagler
24 states, quote, I am not sure if the teacher had prepared for
25 such a situation or any teacher.  Continued quote on page 21,

1  line two and three.  Quote, unless you are a special education
2  teacher to be truthful.  End of quote.  I am never been a
3  special education teacher, your Honor, and I believe these
4  statements may have affected the decision but I'm not sure.
5              On September 6, 2018, during the civil case hearing
6  Mr. Fuchsberg informed the judge --
7              I'm sorry.  I may mispronounce your name.  I
8  apologize.  Is it "Koeltl"?
9              THE COURT:  "Koeltl".
10             MS. DENICOLO:  That his client, me, wishes to remove
11 the ADA and RA from the claim.  Mr. Fuchsberg prior to this
12 request had never discussed this with me and I didn't
13 understand the implications of removing these claims and I
14 didn't understand how this would affect my case.  On
15 September 18, 2018, I e-mailed Mr. Fuchsberg and citing the
16 document paragraph from the decision, I asked Mr. Fuchsberg to
17 explain.  His e-mail response only confused me more.  What was
18 meant by, quote, we do not meet the legal prerequisite by
19 filing first an administrative claim?
20             On September 24, 2018, I e-mailed Mr. Fuchsberg again
21 and CC'd Mr. Hynes regarding the withdrawal of the ADA and RA
22 citing page two of the judge's decision document, specifically,
23 page 22 and an explanation was never provided regarding this
24 matter.
25             On October 9, 2018, Mr. Hynes provided me a copy of

1    claims document for the 2015/16 termination year stating this
2    was our case and our work would focus mostly on the claims.
3    The claim letters were labeled by letters "A" through "U".  On
4    October 10, 11 around 12, we communicated by e-mail.  Mr. Hynes
5    was asking me to, quote, address each letter and enter my
6    thoughts into the Word document for each point.
7             In my e-mail to Mr. Hynes I explained that my computer
8    had been used to communicate with the BOE school e-mail
9    systems, the school data system and with the administration and
10   that I was uncomfortable putting my case on the Internet.  I
11   wanted to protect the confidentiality and integrity of the
12   case.
13            In Mr. Hynes' October 12, 2018 e-mail he agreed to let
14   me write my responses to each letter claimed by hand.  I was
15   somewhat confused by Mr. Hynes' request to enter claim letters
16   into a Word document because between March 17, 2016, through
17   August 22, 2016, I delivered to Ms. Stein three large binders
18   containing pages of typed transcripts, timelines referencing
19   data events and documents by number, as well as supporting
20   documentation.  Sorry.  I'm so dry.
21            Binders including 2015/16 document letters of
22   reprimand and misconduct case documentation and transcripts.  A
23   second binder pertained to all OCR 2010 through 2016.  And a
24   third binder consisted of retaliation and harassment documents
25   for from 2010 to 2015.

1            Your Honor, I do have exhibits to support this.

2            Ms. Stein informed me that she would scan the
3    transcripts and documents around file them into the Fuchsberg
4    computer system.  I didn't understand why Mr. Hynes requested I
5    write everything again.  Mr. Hynes' e-mail, he e-mailed the
6    trail trial disclosure document for October 19 meeting.  At
7    that meeting we completed claims letter A, B and half of C and
8    worked on the initial document disclosure document.

9            On October 29 I fell and fractured my wrist.  It was
10   placed in a cast and I informed Mr. Hynes by e-mail.  We met
11   again on November 16, 2018 to complete claims letter C and D.
12   From November 17 through January 3, 2019, Mr. Hynes canceled
13   and rescheduled and then canceled several appointments.  He
14   finally agreed to meet with me on January 4, 2019, when we
15   completed claims letter E and F.

16           During our February 15 meeting we completed claims
17   letter G.  This was to be the last time we worked on claim
18   letters, with claim letters H through U remaining.  During our
19   discussion regarding the February 11, 2019 e-mail he forwarded
20   from OCR Mr. Hynes stated the case is being investigated but
21   had passed the statute of limitation.  We may not need to use
22   the documents.  He asked that I on March 4 drop off the copies
23   of OCR consent forms parents signed in 2014.  Then in March 14,
24   2019 I received a letter from the Fuchsberg firm notifying me
25   of the May 2 deposition hearing.  On April 11 Mr. Hynes called

1  to cancel.  He stated not to worry that claims letters, we may
2  not need them.  It's going to be about the OCR case.  I became
3  very upset because we had not worked on OCR cases and felt
4  unprepared for the May 2 deposition hearing.  I asked Mr. Hynes
5  to please revisit the OCR report and schedule an appointment
6  which he refused to do and he directed me to speak to
7  Mr. Fuchsberg.
8           I called Mr. Fuchsberg on his cellphone.  He stated he
9  would speak with Mr. Hynes.  Between April 15 and April 19 of
10 2019 he began a series of e-mail correspondence with
11 Mr. Fuchsberg regarding my requested appointment.
12 Mr. Fuchsberg would provide the day for the appointment but not
13 the time.
14          On April 29, 2019, Friday morning, I called
15 Mr. Fuchsberg to confirm the time for our Monday's appointment,
16 which he did.  And during the phone conference Mr. Fuchsberg
17 expressed concern regarding, quote, letters of complaints from
18 parents.  I informed Mr. Fuchsberg I had no knowledge, nor I
19 had ever seen a parent letter of complaint against me.
20          I asked to see these parent letters and Mr. Fuchsberg
21 agreed to leave the packet for me at the front of the desk and
22 added I could review the 3020 transcript and get ready for the
23 deposition.  I then e-mailed Mr. Fuchsberg and confirmed
24 Monday's appointment.  At five o'clock p.m. I picked up the
25 packet.  I did not review its contents.  I focused on

1   completing the claims letter "H" through "U" for Monday's
2   appointment.
3            On Monday April 22, 2019, I was completely blindsided
4   I but what was to come.  I arrived with all the completed claim
5   letters "H" through "U".  Mr. Fuchsberg slid the appellate
6   decision document over to me and stated, they sustained the
7   termination decision.  He have could no longer continue with
8   the case.  Mr. Hynes asked if I had reviewed the contents of
9   the packet and then I stated I had not because I worked on
10  completing the claims letters, Mr. Hynes began to yell.
11           Your Honor, it's important to understand that years of
12  suffering from depression and high anxiety and trauma as a
13  result of what happened to me at PS 195, along with the ordeal
14  of this case I felt completely overload.  It was all too
15  overwhelming.  My thoughts at the time was to get through the
16  claims and then address the packet contents.  Mr. Hynes left
17  the conference room and Mr. Fuchsberg briefly mentioned
18  something about a $300,000 settlement.  Nothing more was
19  discussed.
20           On April 23 --
21           THE COURT:  Ms. Denicolo, let me just caution you,
22  first of all, I don't get involved in settlement discussions.
23           Second, you don't have to reveal to me any attorney
24  client discussions that you have had with the Fuchsberg firm
25  because if you do, that could be considered to be a waiver of

any attorney/client privilege that you have had with the Fuchsberg firm.

The only purpose for today's conference is the Fuchsberg firm has submitted an application to withdraw from representing you in this case. And based upon -- and I'll let you finish saying whatever you want to say -- but I just want to make sure that you don't give up any rights that you otherwise have by saying what you are saying. That's why I gave you the caution when you mentioned something about a settlement offer and also then talked about what your conversation was with Mr. Fuchsberg.

As I said, the only reason for today's hearing is the application by the Fuchsberg firm to withdraw from representing you. And it seems apparent to me but you haven't said it one way or another, that not only don't you oppose the Fuchsberg firm's withdrawal from representing you but there are conflicts between you and the Fuchsberg firm over the way in which the Fuchsberg firm has been representing you in this case.

The result of that would be that the application by the Fuchsberg firm to represent you would be granted and then the question, and you would have the opportunity then to get another lawyer to represent you and I would give you the time to do that. And then there would be the issue of are there any disputes over what are called retaining liens and charging liens and I don't know if the Fuchsberg firm is even seeking

1   any of that but if there were disputes over that I
2   traditionally send those to the magistrate judge.
3            MR. HYNES:  Your Honor, we're not asserting any sort
4   of charging lien.
5            THE COURT:  No retaining liens, no charging liens?
6            MR. HYNES:  No.
7            THE COURT:  I just wanted to place that into
8   perspective.  You are welcomed to continue.
9            MS. DENICOLO:  I don't know, your Honor, the
10  ramifications of counsel's withdrawal from the case and how
11  that affect my case.  And I don't know the ramifications of
12  differences between discharging an attorney, how would that
13  affect my case.
14           THE COURT:  Right.  There are consequences for
15  so-called charging liens and retaining liens based upon the
16  circumstances under which lawyers cease to represent a client.
17  In this case the outgoing lawyers, the Fuchsberg firm, is not
18  seeking any charging liens or retaining liens.  A charging lien
19  means that if the plaintiff gets a recovery in the action and
20  an attorney has a, quote, charging lien, then the outgoing
21  attorney has a right to some portion of recovery that the
22  plaintiff eventually gets in the case.  And the circumstances
23  under which the attorney leaves can have an affect on whether
24  the attorney is entitled to a charging lien or not.  In this
25  case the outgoing lawyers are not seeking a charging lien.

1           A retaining lien is the outgoing lawyers are able to
2    withhold the file, any papers that they have in the case until
3    they're paid for any work that they've done to date.
4           In this case the lawyers are not seeking a retaining
5    lien.  What that means is the Fuchsberg firm is perfectly
6    prepared to deliver to you your entire file that they have
7    which you can then give to a new lawyer.  And I take it that
8    the Fuchsberg firm is not seeking any unpaid fees or anything
9    like that.
10          MR. HYNES:  No, your Honor.
11          THE COURT:  OK.  So your outgoing liens are not
12   seeking any fees, charging liens or retaining liens.  So I
13   don't know of any difference between discharging a lawyer and
14   allowing and granting an application by a lawyer to withdraw
15   from representing you.  But I don't decide legal questions
16   until they're briefed on the facts and the law.  If you think
17   that you have any rights against the Fuchsberg firm, you are
18   welcome to consult with any other lawyers.  You are welcome to
19   consult with the legal assistance group across the street.
20          The only issue at the moment is should the Fuchsberg
21   firm continue to represent you.  And it seems pretty imminently
22   clear that they do not want to continue to represent you and
23   you don't want them to continue to represent you, and you
24   should be given the opportunity to get a new lawyer or to
25   represent yourself in the case.

1           MS. DENICOLO:  I have made several attempts to contact

2     several lawyers in the whistleblowing retaliation area

3     especially.  And it doesn't seem that they're open to reviewing

4     this case.  And I think it's pretty much -- I think that there

5     were things that should have been set up at the beginning with

6     the lawyer from Mr. Fuchsberg firm that were set up -- it

7     turned out to be a termination case in the end.  So there lies

8     the problem for me.  I just want to understand, your Honor.  I

9     just so have some questions if you can just assist me with some

10    answers regarding the legality of this situation and

11    withdrawal.

12          So if my attorney withdraws from the retaliation case

13    can it be opened at a later time?

14          THE COURT:  It's not closed.

15          MS. DENICOLO:  Is there a statute of limitation in

16    terms of when and what would constitute the case to be closed?

17          THE COURT:  I know what you are saying.  The statute

18    of limitations is tolled from the time that the case is brought

19    until the time that the case is closed.  And the case, as I

20    said earlier, is not being closed just because your lawyer

21    withdraws.  The normal procedure that occurs is the case is

22    stayed for a period of time, 30 days, 60 days to allow in this

23    case you to get a new lawyer.  And if you're not able to get a

24    new lawyer, you're welcome to continue the case pro se

25    representing yourself.

1        When would the case be closed?  The case would be
2   closed if after given the opportunity to get a new lawyer or to
3   continue the case yourself pro so say which you can do, if at
4   some point you stop, you don't continue with the case --
5        MS. DENICOLO:  How much time would that be?  You're
6   saying 30 days.  Would it be a year?
7        THE COURT:  You're not following me precisely.  So
8   what I would do is I would enter an order which would say
9   plaintiff's application by Fuchsberg firm to withdraw as
10  counsel for the plaintiff.  The case is stayed for 30 days to
11  allow the plaintiff to seek now counsel.  After 30 days the
12  plaintiff must appear by new counsel or appear pro se.  If the
13  plaintiff appears pro se the plaintiff should provide an
14  address at which documents can be served on the plaintiff.
15        So if you're representing yourself, the case goes on
16  with you representing yourself and the defendants then would
17  have the right to serve you with papers rather than serving
18  your lawyer with papers.
19        If you needed more than 30 days to get a new lawyer,
20  you write me a letter saying I need another than 30 days and I
21  would usually grant such an application.  Then you would have
22  30 more days to get a lawyer.  And if you didn't get a lawyer
23  by that time, you just file a paper saying you're representing
24  yourself in this case and papers may be served on you.
25        I would urge you to talk to the legal assistance group

1   across the street who provide legal assistance to people who
2   are representing themselves pro se and then the case proceeds.
3   And you have to, if you are not represented by a lawyer at that
4   point, you have to represent yourself.
5            MS. DENICOLO:  I have to represent myself or what if I
6   don't want to represent myself?
7            THE COURT:  If you don't want -- this is your case.
8            MS. DENICOLO:  I know.
9            THE COURT:  So it's Denicolo against the Board of
10  Education, OK.  So if you don't get a lawyer and you choose not
11  to represent yourself, you can discontinue the case.  And
12  again, I urge you to talk to the legal assistance group across
13  the street with respect to your various options.  You're the
14  plaintiff.  You do not have to continue the case.  It's up to
15  you.  You can talk to the legal assistance group about what the
16  various consequences are.
17           I realize this is not the only action that involves
18  you.  I decided a motion in the case in which I found that you
19  are not collaterally estopped from pursuing this case based
20  upon other proceedings that you had.  But it's up to you of
21  course as the plaintiff whether you want to continue the case
22  or not.
23           MR. HYNES:  Well, if I'm having difficulty finding an
24  attorney, it's not that I don't want a continue.  I'm at this
25  point, based on all of these documents here that I just feel

1    like and I just feel discouraged at this point.  So I'm just
2    speculating how to look forward to my options.
3             THE COURT:  Right.  I am the judge, right.  So I have
4    to make sure that the case proceeds fairly as between the
5    plaintiff and the defendant.  So I can't give legal advice.  I
6    certainly can explain what's going on before me.  And I can't
7    stress enough that you should talk to the legal assistance
8    group across the street.
9             Are you familiar with the legal assistance group?
10            MS. DENICOLO:  No.
11            THE COURT:  Let me give you a flyer and I'll give a
12   copy also to the defendant with the details of the legal
13   assistance group.
14            MS. DENICOLO:  Thank you, your Honor.
15            THE COURT:  Because they're located across the street
16   in the Thurgood Marshal courthouse and they actually do provide
17   legal advice to people who are representing themselves.  So you
18   can talk to them both about what they can do in terms of
19   references to get a lawyer and also about what your various
20   options are in the case.
21            MS. DENICOLO:  OK.  Just one more question.
22            THE COURT:  Sure.
23            MS. DENICOLO:  How does the OCR disability claim
24   relate to the retaliation claim?  If you can somewhat speak to
25   that or not?

1             THE COURT:  All right.  That's something I can't
2     answer for you because I can't give legal advice.
3             MS. DENICOLO:  OK.  All right.  Your Honor, I
4     appreciate your time and your assistance.
5             THE COURT:  OK.
6             MS. DENICOLO:  And patience.
7             THE COURT:  Well, I will enter an order which says
8     that the application by the Fuchsberg firm to withdraw as
9     counsel for plaintiff is granted.
10            The case is stayed until July 26 to allow the
11    plaintiff to seek new counsel or to represent herself.
12            The plaintiff must appear by new counsel by July 26,
13    2019 or file a notice that she is representing herself and
14    provide an address at which papers can be served.
15            The Fuchsberg firm is not seeking any retaining lien
16    or charging lean for any alleged unpaid fees in the case, fees
17    or costs in the case.
18            MS. DENICOLO:  Your Honor, I just want to be clear on
19    one thing.
20            THE COURT:  Sure.
21            MS. DENICOLO:  So in their withdrawal and in their
22    withdrawing, are they still somewhat involved when I hire a new
23    attorney or are they just completely separated from the case
24    total?
25            MR. HYNES:  Your Honor, I would just say that we would

1    gradually transfer the file and I would gladly personally
2    because I know the case very well discuss with any other
3    attorney any other information they need that's within my
4    knowledge and have no issues doing that but I just wanted it to
5    be clear.
6              THE COURT:  OK.  Is there anything else you would like
7    to say?
8              MR. HYNES:  No, your Honor.  Just that we put in
9    specific reasons to withdraw.  Ms. Denicolo didn't exactly
10   address those.  She addressed other reasons.  I think all of
11   them go to --
12             MS. DENICOLO:  No.
13             MR. HYNES:  There are some conflicts that I would add.
14   We have no lien.  Gladly assist in getting Ms. Denicolo the
15   file and discussing with either retained attorneys or attorneys
16   looking to find out more information.  I'll gladly discuss the
17   case with them.  That's all, your Honor.
18             THE COURT:  Ms. Denicolo, do you want the Fuchsberg
19   firm to transfer their full file to you or do you want to look
20   for a new lawyer and ask that they transfer the file to a new
21   lawyer if you find one?  They've expressed willingness not only
22   to turnover the file but to talk to any new lawyer about the
23   case to help acquaint them.  You may or may not want them to do
24   that but it's up to you.
25             MS. DENICOLO:  Yes, I would rather they not do that.

1           THE COURT:  Again, I can't give you legal advice.  But
2    if you want them to transfer the file to you, that's what
3    they'll do.  You'll have the full file then and you can provide
4    that to any lawyers that you're talking to about taking your
5    case.
6           MS. DENICOLO:  Yes, I would prefer that, your Honor.
7           THE COURT:  OK.  So we'll put that in the order also.
8    The Fuchsberg film should promptly deliver its file to the
9    plaintiff.  But you should make sure to keep that file
10   Ms. Denicolo in a way that can be easily transferred and
11   reviewed by a new lawyer.
12          MS. DENICOLO:  OK.
13          THE COURT:  OK.
14          MS. DENICOLO:  All right, your Honor.
15          THE COURT:  OK.  Defendant want to add anything to
16   this?  I think not.
17          MS. SOULIOPOLOUS:  No, your Honor.
18          THE COURT:  OK.  All right.  Thank you, all.
19          (Adjourned)